NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0311n.06

Case No. 21-1795

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Aug 01, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| ANDREW DREW JOHNSON, | ) | THE WESTERN DISTRICT OF |
|  | ) | MICHIGAN |
| Defendant-Appellant. | ) |  |
|  | ) | OPINION |
|  | ) |  |

Before: DONALD, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. When Michigan Police caught Andrew Johnson selling meth, he ran into trouble with state and federal law. On the state side, Johnson faced Michigan criminal charges. On the federal side, he violated the terms of his supervised release. Johnson spent two years in prison—one in state custody, the other in federal custody—before he pleaded guilty to both sets of charges. In the end, Michigan sentenced him to time served. Then, the federal district court sentenced him to 36 months, against which Johnson received credit for the year he had spent in federal prison. Now Johnson wants his year in state custody subtracted too and asks us to remand for resentencing. For the following reasons, we decline to do so and affirm.

I.

Andrew Johnson's run-ins with the law started in 2010 when federal prosecutors convicted him for possessing cocaine base with intent to distribute. He received a ten-year sentence with

eight years of supervised release to follow. Freed three years early, Johnson started his supervised-release term in August 2017. And as a condition of that release, Johnson agreed he would not "commit another federal, state, or local crime." (R. 135, Am. Pet., PageID 349.)

But in December 2019, Michigan police arrested Johnson after a drug deal gone wrong. That arrest led to Michigan criminal charges for two counts of controlled substance delivery, fleeing a police officer, and tampering with evidence. Michigan then placed him in state custody to await trial.

Johnson's Michigan charges spelled trouble at the federal level too. About a year into Johnson's wait in state custody, a federal district court—the one overseeing Johnson's term of supervised release—summoned him for a hearing. That hearing resulted in two orders. The first delayed Johnson's final revocation hearing "until after the [Michigan] criminal charge[s] [were] resolved." (R. 146, Order, PageID 368.) The second moved Johnson to federal custody to wait for his Michigan trial.

Johnson sat in federal custody for ten more months before entering a no-contest plea to the Michigan criminal charges. At this point, he had spent one year in state custody and close to one year in federal custody. The Michigan court sentenced him to 19–120 months. Against that sentence, the court gave Johnson credit for the 666 days of combined federal and state time. In essence, this credit imposed a sentence for time served. Johnson received parole soon after.

With his Michigan conviction resolved, Johnson returned to the district court for his final revocation hearing. He pleaded guilty to selling meth in violation of his supervised-release term. The district court sentenced him to 36 months' imprisonment.

With the sentence set, the question became what credit, if any, Johnson would receive for the time he had spent in federal and state custody. All agreed that the Bureau of Prisons (BOP) would give Johnson a year of credit for the time he had served in federal custody. But the government expressed some confusion about how Johnson's federal sentence would interact with his state sentence, asking whether the state time would run "consecutive to" the federal term. (R. 168, SRV Hr'g, PageID 440.)  The district court answered that it wouldn't "make[] any difference . . . since [Johnson had] already served it." (*Id.*)  Still, the government remained unsure, worrying that if the district court "ordered it concurrent," the BOP would "subtract his state time." (*Id.*) It then urged the district court to make the sentences "consecutive" to avoid any confusion. (*Id.*)

The district court gave Johnson's counsel a chance to respond. He explained that BOP would not subtract any of the time Johnson spent in state custody. So it would only "confuse the matter" to say that the sentences should run consecutively. (*Id.* at PageID 441.) The district court agreed with Johnson's counsel: "That's essentially my understanding as well. And, frankly, I'm not interested in making it consecutive. So I'm just going to leave it as is." (*Id.*)

With the government's concern settled, the district court issued its written judgment. That judgment set out the 36-month sentence. And—in line with the conversations at the sentencing hearing—it didn't mention Johnson's discharged-state sentence or any concurrent-or-consecutive status.

Johnson appealed, asserting that the district court's oral sentence conflicted with its written judgment.

## II.

"We review an alleged discrepancy between oral and written sentences de novo." *United States v. Booker*, 994 F.3d 591, 600 (6th Cir. 2021). A few grounds rules govern. To start, when a

written judgment fails to specify whether a sentence is concurrent or consecutive, we assume it's consecutive. *Dotson v. Kizziah*, 966 F.3d 443, 445 (6th Cir. 2020); *see* 18 U.S.C. § 3584(a). On the other hand, "[w]hen an oral sentence conflicts with the written sentence, the oral sentence controls." *Booker*, 994 F.3d at 600 (quoting *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011)).

Johnson claims these ground rules play out in his favor. Focusing on the district court's lack of "interest[] in making [his state and federal sentences] consecutive," Johnson reasons by negative inference. (R. 168, SRV Hr'g Tr., PageID 441.) His logic goes proceeds as follows: (1) At the sentencing hearing, the district court declined to make his state and federal sentences consecutive. (2) Because the district court "reject[ed] a consecutive sentence," it must have "intended" to impose a concurrent sentence instead. (Appellant's Br. at 13–14.) (3) The written judgment, which doesn't mention his discharged-state sentence, thus conflicts with the oral sentence. (4) This means the oral sentence controls, and Johnson's state and federal terms are concurrent.

If the reader's a bit lost, so are we. Even a quick skim of the sentencing-hearing transcript reveals that the district court found the consecutive-or-concurrent dichotomy irrelevant to Johnson's federal sentence. On the consecutive side, Johnson had "already served" and discharged his state sentence. So the district court thought setting the state and federal sentences as consecutive wouldn't "make[] any difference." (R. 168, SRV Hr'g Tr., PageID 440.) On the concurrent side, neither the district court nor Johnson's counsel seemed to view a concurrent sentence as a possibility—let alone an option that would affect the length of Johnson's federal sentence. In fact, Johnson's own counsel emphasized (and the district court agreed) that Johnson couldn't get BOP credit for the time spent in state custody. Put another way, both the district court and Johnson's

counsel found the government's concurrent-or-consecutive concern moot because Johnson had discharged his state sentence. For that reason, both agreed that calling the sentences consecutive would just "confuse the matter."

Viewed in the context of the whole hearing, Johnson's chain of inferences falls apart. Nothing in the record suggests the district court "intended" Johnson to serve a concurrent sentence. Rather, it thought the discharged nature of the state sentence pushed the consecutive-or-concurrent concern out of the picture. The 36-month federal sentence stood on its own; it didn't overlap or stack Johnson's discharged-state sentence. It follows then that the written judgment fell in line with the district court's oral sentence. Neither made Johnson's sentence consecutive or concurrent with the state time he had completed. So, all told, the district court didn't impose a concurrent sentence. Nor did its written judgment conflict with the oral sentence.

More to the point, the district court couldn't have made Johnson's discharged-state sentence and federal sentence concurrent in the first place. This is because federal sentencing law gives district courts discretion to make a sentence concurrent with "an *undischarged* term of imprisonment," not a discharged one. *United States v. Gibbs*, 626 F.3d 344, 349–50 (6th Cir. 2010) (emphasis added). This discretion comes from 18 U.S.C. § 3584. That statute permits qualifying defendants—those "already subject to an undischarged term of imprisonment"—to receive a "concurrent" sentence. *Id.* § 3584(a). And "[n]othing in the statute authorizes [a] district court to extend the benefit of a concurrent sentence to . . . defendants . . . who have previously served sentences, now completed, for related crimes." *United States v. Lucas*, 745 F.3d 626, 629 (2d Cir. 2014) (per curiam).

The Sentencing Guidelines follow suit. Rooted in 18 U.S.C. § 3584, Guideline § 5G1.3 describes three circumstances that justify a concurrent sentence. *See* U.S.S.G. § 5G1.3(b)–(d). The common denominator shared by each circumstance? The "prior prison term remains 'undischarged.'" *United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998). No Guideline provision, on the other hand, allows a district court to make a new "term of imprisonment" concurrent with a "prior prison term" a defendant has "fully" served. *Id.*

Our caselaw has emphasized this limit on a district court's discretion. *See Gibbs*, 626 F.3d at 350 ("[Section] 5G1.3(c) only applies when a defendant has an undischarged term of imprisonment at the time of sentencing . . . ."); *United States v. Dunham*, 295 F.3d 605, 610 (6th Cir. 2002) ("By its terms, U.S.S.G. § 5G1.3(b) only applies to a defendant serving an undischarged term of imprisonment at the time of his federal sentencing."); *United States v. Carpenter*, 359 F. App'x 553, 557 (6th Cir. 2009) (same); *United States v. Newby*, 13 F. App'x 324, 325 (6th Cir. 2001) (remanding for resentencing when a "district court improperly concluded that it had the discretion . . . to run [the defendant's] federal sentence concurrently with the discharged state sentence"). And our sister circuits have done the same. *See, e.g.*, *Lucas*, 745 F.3d at 629; *Hasan v. Sniezek*, 379 F. App'x 232, 235 (3rd Cir. 2010); *United States v. Fay*, 547 F.3d 1231, 1236 (10th Cir. 2008); *United States v. Cole*, 416 F.3d 894, 897–98 (8th Cir. 2005); *United States v. Ramirez*, 252 F.3d 516, 518–19 (1st Cir. 2001); *United States v. Turnipseed*, 159 F.3d 383, 387 (9th Cir. 1998).

The sum of these parts is this: The plain language of 18 U.S.C. § 3584 and Sentencing Guideline § 5G1.3 doesn't cover discharged sentences. For Johnson, this means that the district court lacked authority to do the very thing (give him a concurrent sentence) that he alleges it did. So his argument fails in both fact and theory. Not only did the district court decline to make his

sentence concurrent or consecutive, but to do so would have qualified as reversible error. *See Newby*, 13 F. App'x at 325–26.[1]

III.

For these reasons, we affirm the district court's judgment.

---

[1] One caveat. Although federal sentencing law takes a concurrent sentence off the table in cases like Johnson's, a district court may account for a discharged sentence in other ways. For instance, Guideline § 5K2.23 allows a district court to grant a downward departure for some discharged sentences. And a district court may always consider a "discharged sentence in weighing the § 3553 factors." *Gibbs*, 626 F.3d at 350.